UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Number: |
| v. | |
| PATRICK STRAUSS, | |
| Defendant. | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

Defendant Patrick Strauss agrees to admit guilt and enter a plea of guilty to Count One of the Information, which charges Strauss with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349. Pursuant to Federal Rule of Criminal Procedure 11, the Government and Strauss, with concurrence of his attorney, agree and stipulate that the Government would prove the following facts at trial beyond a reasonable doubt:

### Background

*Relevant Persons*

1. Defendant **Patrick Strauss** was a resident of the District of Columbia and the owner and operator of Powergrid Real Estate LLC.

2. Kelly Winston was a resident of Maryland and employed as an accountant for several businesses under the control of Individual 1 that operated in the District of Columbia.

3. Individual 1 was a resident of Maryland and operated several businesses in the District of Columbia that provide services to the District.

### *Relevant Entities*

4. Powergrid Real Estate LLC ("Powergrid"), was a real estate business registered as a corporation in Delaware on May 23, 2017, and operated in the District of Columbia.

5. Capital Bank, N.A. ("Capital Bank") is a financial institution insured by the Federal Deposit Insurance Corporation.

### *The Small Business Administration*

6. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

### *The Paycheck Protection Program*

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

8. In order to obtain a PPP loan, a qualifying business must have submitted a PPP loan application, which is signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative

certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must have provided documentation showing their payroll expenses. To qualify for eligibility, businesses that applied for a PPP loan needed to be in operation as of February 15, 2020.

9. A PPP loan application must have been processed by a participating financial institution (the lender). If a PPP loan application was approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds must have been used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

11. On December 27, 2020, the Economic Aid to Hard-Hit Small Business, Nonprofits and Venues Act provided additional funding for the PPP and extended the application deadline to March 31, 2021. The act enables borrowers to take a second draw PPP loan under the same general terms as their first PPP loan up to a maximum loan amount of $2 million. The act reopened the program to borrowers who did not previously receive a first draw PPP loan. To be eligible for a second draw, borrowers must employ no more than 300 employees, demonstrate a 25% reduction

in gross receipts during a calendar quarter in 2020, and have expended the full amount of their initial PPP loan. Allowable expenses were expanded to include worker protection costs related to COVID-19, uninsured property damage costs caused by looting or vandalism during 2020, and certain supplier costs and expenses for operations. The expansion applies retroactively to first draw PPP loans that have not been forgiven by the SBA.

12. On March 25, 2021, the PPP Extension Act of 2021 extended the application deadline from March 31, 2021, to May 31, 2021. In addition to extending the PPP application filing window by 60 days, the Extension Act provided an extra 30 days for the SBA to finish processing applications received by the May 31, 2021, deadline.

### Bank Fraud Conspiracy

13. In the summer of 2020, Individual 1 approached **Strauss** to ask if he wanted to apply, with Individual 1's assistance, for a PPP loan in the name of Powergrid. At the time, both Individual 1 and **Strauss** were aware that Powergrid did not qualify for a PPP loan because it did not have any employees or payroll.

14. Individual 1 and **Strauss** agreed that Individual 1 would receive a portion of the PPP funds if the loan application was approved and funded.

15. In July 2020, Individual 1 provided **Strauss** with a PPP loan application containing materially false statements, including that Powergrid had 16 employees and an average monthly payroll of $132,547.17, when in fact, as of July 2020, it had no employees and no payroll. In addition, Individual 1 provided **Strauss** false and fraudulent supporting documents to submit with the loan application, including: false financial statements for 2019 and for the first two quarters of 2020, false monthly payroll reports for May 2019 through March 2020, and false Employer's

Quarterly Federal Tax Return (Forms 941), for the second, third, and fourth quarters of 2019 and first quarter of 2020.

16.     **Strauss** understood that the application and supporting documentation given to him by Individual 1 had been prepared by Winston, even though neither Individual 1, nor Winston, requested, or received any information from **Strauss** that would be necessary to submit a complete and accurate PPP loan application had Powergrid been eligible for a loan.

17.     Individual 1 and **Strauss** agreed that **Strauss** would submit the PPP loan application to Capital Bank to seek a loan in the amount of $331,367.92.

18.     On or about July 10, 2020, **Strauss** submitted the PPP Loan application given to him by Individual 1 to Capital Bank to obtain a $331,367.92 PPP loan in the name of Powergrid. In addition, **Strauss** submitted to Capital Bank, with his application, supporting documents he knew to contain false information.

19.     On or about July 22, 2020, as a result of a system failure by Capital Bank, **Strauss**, through Winston and Individual 1, resubmitted Powergrid's false and fraudulent PPP loan application.

20.     On July 22, 2020, Capital Bank, based on the representations of **Strauss**, adjusted the loan amount to $304,933.

21.     On July 22, 2020, the SBA and Capital Bank approved Strauss's fraudulent PPP loan application and funded the loan in amount of $304,900.

22.     On July 23, 2020, **Strauss** opened a Capital Bank business checking account ending in -0211.

23.     On July 24, 2020, **Strauss** electronically signed various loan documents including a Promissory Note and Disbursement Request and Authorization.

24. On July 29, 2020, the SBA and Capital Bank wired $304,900 into Powergrid's Capital Bank account ending in -0211.

25. On July 29, 2020, **Strauss** wired $304,800 from Powergrid's Capital Bank account ending in -0211 to a TD Bank account ending in -3426, also held by Powergrid.

26. On August 3, 2020, **Strauss** wired $124,000 from Powergrid's TD Bank account ending in -3426 to a Truist Bank account ending in -1820, held by a business associated with Individual 1.

27. On June 4, 2021, **Strauss** forwarded Individual 1 an email containing a link to Capital Bank's PPP loan forgiveness application for Powergrid.

28. On June 25, 2021, **Strauss** emailed Individual 1 regarding the status of Powergrid's loan forgiveness application. Individual 1 responded that Winston would complete and submit the application.

29. On July 20, 2021, **Strauss** forwarded an email to Winston and Individual 1 from Capital Bank requesting "a summary paycheck or an FTE [(Full Time Equivalent)] snapshot document from ADP" for the period of January 1, 2020, through October 23, 2020.

30. On July 20, 2021, at the direction of Individual 1, Winston prepared false and fraudulent Employer's Quarterly Federal Tax Return (Forms 941) in support of Powergrid's PPP loan forgiveness application.

31. On July 23, 2021, **Strauss** submitted a Form 3508EZ to Capital Bank on behalf of Powergrid seeking forgiveness for his PPP loan. The application falsely claimed that Powergrid had 16 employees at the time **Strauss** received the PPP loan, when in fact it had no employees. The application also falsely claimed that, for the period of July 27, 2020, through October 23,

2020, Powergrid spent the full amount of the second draw loan, $304,900 on payroll costs, when in fact it had no payroll costs.

33. As a result of the false Form 3508EZ submission and supporting documentation, Capital Bank and the SBA forgave Powergrid's PPP loan.

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

*J. Rothstein*

JOSHUA S. ROTHSTEIN
Assistant United States Attorney
NY Bar No. 4453759

DATED: July 24, 2024

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I have read every word of this Statement of the Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 7/29/2024

Patrick Strauss
Defendant

9/11/2024

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: July 26, 2024

Dwight Bostwick
Counsel for Defendant Patrick Strauss